**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **AMINATA MANSARAY**, on behalf of herself and all others similarly situated, and **ABDUL MAJID KAMARA**, individually,<br><br>Plaintiffs,<br><br>v.<br><br>**TD BANK, N.A.**, and **EQUIFAX INFORMATION SERVICES LLC,**<br><br>Defendants. | Civil Action No. 2:22-CV-05039-AB |

## <u>AMENDED CLASS ACTION COMPLAINT</u>

### I.    <u>PRELIMINARY STATEMENT</u>

1.      Plaintiff Aminata Mansaray, on behalf of herself and all others similarly situated, brings claims against Defendant TD Bank, N.A. for its uniform violations of the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §§ 1681-1681x, at section 1681s-2(b).

2.      Plaintiffs Mansaray and Abdul Majid Kamara also bring individual claims against TD Bank, N.A. and Equifax Information Services LLC for separate and independent violations of the FCRA.

### II.    <u>JURISDICTION & VENUE</u>

3.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

4.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III.    <u>THE PARTIES</u>

5.      Plaintiffs Aminata Mansaray and Abdul Majid Kamara are adult individuals residing in Glenolden, Pennsylvania.

6.      Defendant TD Bank, N.A. ("TD") is a national bank that regularly conducts business in the Eastern District of Pennsylvania and that has a principal place of business in Cherry Hill, New Jersey.

7.      Defendant Equifax Information Services LLC ("Equifax") is a consumer reporting agency ("CRA") that regularly conducts business in Eastern District of Pennsylvania and that has a principal place of business located at 1500 Peachtree St. NW in Atlanta, Georgia.

## IV.    FACTUAL ALLEGATIONS

*Plaintiffs' Experience with TD Bank*

8.      TD regularly makes loans to consumers for the purchase and/or refinance of residential real estate and secures those loans with mortgages.

9.      TD regularly furnishes information concerning its mortgage loan customers' payment history to one or more CRAs, including Equifax.

10.     At all relevant times, TD had an agreement with NCP Solutions for the preparation, mailing, and/or processing of periodic mortgage account statements to TD's mortgage loan customers.

11.     Upon information and belief, from October 2020 to June 2021, TD on its own and/or through its collaboration with NCP Solutions failed to timely mail and/or process periodic mortgage account statements to TD's mortgage loan customers, including Plaintiffs.

12.     Upon information and belief, because of this failure to timely mail and/or process mortgage account statements to TD's mortgage loan customers during the October 2020 to June 2021 period, TD furnished information to one or more CRAs, including Equifax, that some of those customers did not make their mortgage payments in a timely fashion even though those customers, including Plaintiffs, had in fact paid TD in accordance with the bank's instructions.

13.     On or about June 10, 2019, Plaintiffs purchased a home in Glenolden, Pennsylvania with the proceeds of a mortgage loan from TD.

14.     At all relevant times, Plaintiffs made their mortgage payments to TD on time as it instructed.

15.     At all relevant times and pursuant to its customary practice, TD furnished information about Plaintiffs' mortgage payments to one or more CRAs, including Equifax.

16.     TD furnished inaccurate information concerning Plaintiffs' mortgage payment history to one or more CRAs, including Equifax, on multiple occasions in 2020 and 2021, namely that Plaintiffs had failed to make one or more monthly mortgage payments and/or had made one or more monthly mortgage payments more than 30 days after payment was due.

17.     Additionally, TD furnished information to one or more CRAs, including Equifax, stating that it had no record of Plaintiffs' mortgage loan payments for the months of June 2020 to March 2021 notwithstanding Plaintiffs' mortgage payments during those months.

18.     In the spring of 2021, Plaintiffs contacted TD about their mortgage and, on or about April 26, 2021, TD sent Plaintiffs a letter concerning "an opportunity to enter into a loan modification trial period plan."

19.     Plaintiffs notified TD of their intent to accept the trial period plan offer in accordance with the terms of the April 26, 2021 letter.

20.     On or about June 1, 2021, Plaintiffs made the first trial period payment as TD had instructed in its April 26, 2021 letter.

21.     Plaintiffs timely made each of the required trial period payments as instructed by TD, namely for June, July, August, and September 2021.

22.     In or about December 2021, Plaintiffs learned that TD had furnished inaccurate and/or incomplete information about their mortgage payment history for a number of months in 2020 and 2021 even though they had paid their mortgage in accordance with TD's instruction every month.

23.     On or about December 4, 2021, Plaintiffs sent letters to multiple CRAs, including Equifax, disputing the inaccurate mortgage payment history information TD had furnished.

24.     Upon information and belief, and consistent with their independent obligations under FCRA section 1681i(a)(2), the CRAs to which Plaintiffs had written, including Equifax, notified TD of Plaintiffs' December 2021 dispute through the ACDV dispute process.

25.     In response to Plaintiffs' December 2021 disputes through the CRAs, including Equifax, TD verified the disputed late payment history information for, inter alia, May 2021, one of the months in which TD had failed to timely send and/or process Plaintiffs' monthly mortgage statement.

26.     Additionally, TD failed to mark the information Plaintiffs had disputed as "disputed" consistent with its obligation under FCRA section 1681s-2(b) in its subsequent furnishing of that information to one or more CRAs, including Equifax.

27.     On or about January 5, 2022, Plaintiffs sent a second round of letters to multiple CRAs, including Equifax, again disputing the inaccurate mortgage payment history information TD had furnished and verified in response to Plaintiffs' December 2021 disputes.

28.     Upon information and belief, and consistent with their independent obligations under FCRA section 1681i(a)(2), the CRAs to which Plaintiffs had written, including Equifax, notified TD of Plaintiffs' January 2022 dispute through the ACDV process.

29.     In response to Plaintiffs' January 2022 disputes through the CRAs, including Equifax, TD again verified the disputed late payment history information for, inter alia, May 2021, when TD had failed to timely send and/or process Plaintiffs' monthly mortgage statement.

30.     Additionally, TD again failed to mark the information Plaintiffs had disputed as "disputed" consistent with its obligation under FCRA section 1681s-2(b) in its subsequent furnishing of that information to one or more CRAs, including Equifax.

31.     Plaintiffs also sent an additional and substantially identical letter directly to TD in or about February 2022 disputing the inaccurate mortgage payment history information it had furnished to one or more CRAs, including Equifax.

32.     In a letter dated March 21, 2022, TD stated, in relevant part, as follows:

> TD Bank has investigated the marks assessed from October 2020 through June 2021 and has found that an error has occurred due to Print Vendor, NCP, Missed SLA on statement mailing. We have removed the late marks and made corrections on 03/05/2022 to ensure all four credit reporting agencies are reflecting no late marks.

33.     In another letter dated May 10, 2022, TD wrote to Plaintiffs and stated, in relevant part, as follows:

> Today we're writing about a recent review of your TD Bank loan account. During the period of October 2020 - May 2021, there were occasions that periodic statements were not delivered timely to you.
>
> * * *
>
> We take great measures to avoid mistakes and create legendary banking experience, and we're sorry for this oversight. To make things right, we have made a credit bureau correction to reflect timely receipt of payment. Please note, it may take up to 60 days for your credit report to reflect this correction.

34.     Indeed, in credit file disclosures from one or more CRAs, including Equifax, Plaintiffs learned that TD had corrected its previous errors, removed the late payment mark for May 2021, which thereafter reflected a timely payment.

35.     Thus, TD's previous verification of the May 2021 late payment was based upon the bank's "error" and "oversight," and thus was factually inaccurate.

36.     As of December 14, 2022, inaccurate late marks for July 2021 and August 2021 still remained on Plaintiffs' mortgage payment history even though they made those payments in accordance with the terms of TD's trial period plan set forth in its letter of April 26, 2021.

37.     In their January 5, 2022 disputes to one or more CRAs, including Equifax, and in their dispute correspondence directly to TD, Plaintiffs had also disputed the July and August 2021 late payment history information as being inaccurate.

38.     TD did not correct the information Plaintiffs had disputed concerning their July and August 2021 payments, which remained on their credit reports for some time, and did not mark the information as "disputed" by the consumer, even though Plaintiffs had obviously and repeatedly disputed it and despite the fact that Plaintiffs had made payments pursuant to the trial period plan on July 2, 2021 and August 4, 2021. These payments were not 30 days late as TD reported and verified to one or more CRAs, including Equifax.

39.     As a direct and proximate result of TD's above alleged conduct, Plaintiffs suffered harm, including the loss of time and resources associated with disputing (to no avail) and harm to their credit reputation and credit scores.

40.     At all relevant times, TD acted through its duly authorized agents, including, but not limited to NCP Solutions, and/or employees with respect to the above-alleged conduct.

41.     At all relevant times, TD willfully or negligently violated FCRA section 1681s-2(b)'s requirements.

*Plaintiffs' Experience with Equifax*

42.     Defendant Equifax reported derogatory and inaccurate information relating to Plaintiffs and Plaintiffs' mortgage payment history to third parties (hereafter the "inaccurate information") from at least January 2022 through present.

43.     The inaccurate information on Plaintiffs' credit reports includes, but is not limited to, a mortgage loan with TD Bank that was inaccurately reporting late payments for Plaintiffs for the months of May 2021, July 2021, and August 2021, when Plaintiffs had made timely payments in accordance with TD's instructions.

44.     The inaccurate information negatively reflects upon Plaintiffs, Plaintiffs' credit repayment history, Plaintiffs' financial responsibility as a debtor and Plaintiffs' credit worthiness.

45.     Equifax has been reporting the inaccurate information through the issuance of false and inaccurate credit information and consumer credit reports that they have disseminated to various persons and credit grantors, both known and unknown from at least January 2022.

46.     Plaintiffs disputed the inaccurate information with Equifax by following Equifax's established procedures for disputing consumer credit information and the inaccurate account information was verified several times.

47.     Plaintiffs disputed the inaccurate information with Equifax in December 2021 and January 2022 through the present.

48.     Notwithstanding Plaintiffs' efforts, Equifax has sent Plaintiffs correspondence indicating their intent to continue publishing the inaccurate information and Equifax continues to publish and disseminate such inaccurate information to other third parties, persons, entities, and credit grantors. Equifax has repeatedly published and disseminated consumer reports to such third parties from at least January 2022 through the present.

49.     As a result of Equifax's conduct, Plaintiffs have suffered actual damages in the form of lost credit opportunities, credit defamation and emotional distress, including anxiety, frustration, embarrassment, and humiliation.

50.     At all times pertinent hereto, Equifax was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Equifax.

51.     At all times pertinent hereto, Equifax's conduct, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard of federal law and the rights of Plaintiffs herein.

## V.      <u>CLASS ALLEGATIONS</u>

52.     Ms. Mansaray seeks to represent the following Classes:

*Class No. 1 – Failure to Correct Upon Dispute*

All individuals with an address in the United States and its Territories (1) who were residential mortgage loan customers of Defendant TD Bank, N.A. ("TD") during the period October 1, 2020 to July 31, 2021 (the "Error Period"); (2) about whom TD furnished one or more late payment marks to a consumer reporting agency during the Error Period; (3) who disputed through a consumer reporting agency one or more TD late payment marks corresponding to months during the Error Period; and (4) for whom TD failed to remove the disputed late payment marks from the credit files of those consumers in response to their disputes, for the period beginning two years prior to the filing of this matter until the date of any class certification order in this matter.

*Class No. 2 – Failure to Mark Disputed Information as "Disputed"*

All individuals with an address in the United States and its Territories (1) who were residential mortgage loan customers of Defendant TD Bank, N.A. ("TD") during the period October 1, 2020 to July 31, 2021 (the "Error Period"); (2) about whom TD furnished one or more late payment marks to a consumer reporting agency during the Error Period; (3) who disputed through a consumer reporting agency one or more TD late payment marks corresponding to months during the Error Period; and (4) for whom TD failed to mark the disputed late payment marks corresponding to months during the Vendor Error Period as "disputed" when it subsequently furnished information to the consumer reporting agency from which it received notice of the dispute, for the period beginning two years prior to the filing of this matter until the date of any class certification order in this matter.

53.    Plaintiff Mansaray reserves the right to amend the above definitions based upon developments in discovery or as otherwise appropriate and permitted.

54.    Members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to TD, Plaintiff Mansaray avers upon information and belief that they minimally number in the hundreds.

55.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether TD furnished late payment marks about Class members to one or more CRAs; whether Class members disputed those late payment marks; whether TD failed to correct the disputed late payment marks; whether TD failed to mark the disputed late payment marks as "disputed;" whether TD's conduct was negligent, willful, or reckless; and whether members of the Classes are entitled to statutory damages, actual and/or punitive damages, and in what amounts.

56.    Plaintiff Mansaray's claims are typical of the claims of the Classes, which all arise from the same operative facts and are based on the same legal theories.

57.    Plaintiff Mansaray will fairly and adequately protect the interests of the Classes. Plaintiff Mansaray is committed to vigorously litigating this matter. Further, Plaintiff Mansaray has secured counsel who are experienced in handling FCRA and other consumer class actions.

Neither Plaintiff Mansaray nor her counsel has any interests which might cause them not to vigorously pursue this claim.

58.    This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would, as a practical matter, be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

59.    A class action is a superior method for the fair and efficient adjudication of this controversy. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the Class members may be derived from TD's records.

## VI.    CLAIMS FOR RELIEF

### COUNT ONE

**On Behalf of Plaintiff Mansaray and Class No. 1
for Defendant TD Bank, N.A.'s
Violation of 15 U.S.C. § 1681s-2(b)**

60.    Plaintiff Mansaray incorporates the foregoing paragraphs as though set forth at length herein.

61.    After receiving notice from one or more CRAs of Plaintiff Mansaray's and Class members' disputes of late payment remarks corresponding to mortgage payments due during the Error Period from October 2020 to July 31, 2021, TD negligently or willfully failed to correct the inaccurate late payment history, in violation of FCRA section 1681s-2(b).

62.    TD is liable to Plaintiff Mansaray and members of Class No. 1 for all relief available pursuant to FCRA sections 1681n and 1681o.

## COUNT TWO

**On Behalf of Plaintiff Mansaray and Class No. 2
for Defendant TD Bank, N.A.'s
Violation of 15 U.S.C. § 1681s-2(b)**

63.    Plaintiff Mansaray incorporates the foregoing paragraphs as though set forth at length herein.

64.    After receiving notice from one or more CRAs of Plaintiff Mansaray's and Class members' disputes of erroneous late mortgage payment information corresponding to mortgage payments due during the Error Period from October 2020 to July 31, 2021, TD negligently or willfully failed to mark the disputed information as "disputed," in violation of FCRA section 1681s-2(b).

65.    TD is liable to Plaintiff Mansaray and members of Class No. 2 for all relief available pursuant to FCRA sections 1681n and 1681o.

## COUNT THREE

**On Behalf of Plaintiffs Mansaray and Kamara individually
for Defendant TD Bank, N.A.'s
Violation of 15 U.S.C. § 1681s-2(b)**

66.    Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

67.    Plaintiffs made their mortgage payments for June, July, August, and September of 2021 in accordance with TD's instructions set forth in its letter of April 26, 2021 concerning the trial period plan.

68.     With respect to these payments, TD furnished information to one or more CRAs, including Equifax, that Plaintiffs' June and September 2021 payments were timely, but that Plaintiff's July and August 2021 payments were at least 30 days late.

69.     The information TD furnished to one or more CRAs concerning Plaintiffs' July and August 2021 payments, namely that Plaintiffs' payments were at least 30 days late, was inaccurate.

70.     After receiving notice from one or more CRAs of Plaintiffs' disputes of erroneous late mortgage payment information corresponding to mortgage payments in July 2021 and August 2021, TD negligently or willfully failed to reinvestigate and correct the inaccurate late payment history or to mark them as "disputed," in violation of FCRA section 1681s-2(b).

71.     TD is liable to Plaintiffs for all relief available pursuant to FCRA sections 1681n and 1681o.

**COUNT FOUR**

**On Behalf of Plaintiffs Mansaray and Kamara individually
for Defendant Equifax Information Services LLC's
Violation of 15 U.S.C. § 1681i(a)**

72.     Plaintiffs incorporate the foregoing paragraphs as though the same were set forth at length herein.

73.     At all times pertinent hereto, Equifax was a "person" and "consumer reporting agency" as those terms are defined by 15 U.S.C. §§ 1681a(b) and (f).

74.     At all times pertinent hereto, Plaintiffs were "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

75.     At all times pertinent hereto, the above-mentioned credit reports were "consumer reports" as that term is defined by 15 U.S.C. § 1681a(d).

76.     Upon receipt of Plaintiffs' disputes of inaccurate information furnished by Defendant TD concerning Plaintiffs' mortgage account, Equifax negligently or willfully failed to

conduct a reasonable reinvestigation of Plaintiffs' disputes or to delete the disputed information from Plaintiffs' credit files in violation of FCRA section 1681i(a).

77.     With respect to Plaintiffs' disputes of the inaccurate May 2021 late payment mark, Equifax merely parroted the information it received from TD, which TD later admitted was inaccurate and should be corrected to reflect timely payment.

78.     With respect to Plaintiffs' disputes of the inaccurate July and August 2021 late payment marks, Equifax merely parroted the information it received from TD, which was inaccurate because Plaintiffs made their July and August 2021 mortgage payments in accordance with TD's instructions concerning the trial period plan.

79.     The conduct of Equifax was a direct and proximate cause, as well as a substantial factor, in bringing about the serious injuries, actual damages, and harm to Plaintiffs outlined above.

80.     Defendant Equifax is liable to Plaintiffs for all relief available pursuant to FCRA sections 1681n and 1681o.

## VII.    JURY TRIAL DEMAND

81.     Plaintiffs demand trial by jury on all issues so triable.

## VIII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment in their favor and damages against the Defendants, as set forth in detail in Counts I-IV, above, based on the following forms of requested relief:

(a)     Actual damages;

(b)     Statutory damages;

(c)     Punitive damages;

(d)     Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o; and

(e)     Such other and further relief as may be necessary, just, and proper.

Dated:    June 23, 2023                    Respectfully submitted,

ABDUL KAMARA, individually, and
AMINATA MANSARAY, individually and on
behalf of all others similarly situated,

By:    */s/Siobhán E. McGreal*
Siobhán E. McGreal
Mark D. Mailman
John Soumilas
Jordan M. Sartell (*pro hac vice* forthcoming)
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600
smcgreal@consumerlawfirm.com
mmailman@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

*Attorneys for Plaintiffs*